## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### ORLANDO DIVISION

JACK MERRILL,

                    Plaintiff,

-vs-                                                  Case No.  6:04-cv-1776-Orl-DAB

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.
_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of Defendant's denial of Plaintiff's application for Social Security benefits.  For the reasons set forth herein, the decision of the Commissioner is **REVERSED** and the matter **REMANDED** for additional findings.

### PROCEDURAL HISTORY

On June 6, 2000, Plaintiff filed an application for Disability Insurance Benefits (R. 17). The application was denied initially and upon reconsideration, and Plaintiff requested and received an administrative hearing before an Administrative Law Judge ("the ALJ") (R. 33-51).  On August 1, 2002, the ALJ issued a decision finding that Plaintiff could perform other work in the national economy, and therefore was not disabled (R. 17-24).  The Appeals Council declined Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner (R. 5-7).  This action timely followed.

### NATURE OF DISABILITY CLAIM

Plaintiff claims disability beginning on January 31, 2000, due to residuals of his coronary artery disease, including "excessive fatigue, depression, no stress tolerance, lack of concentration, leg pain, chest, arm and shoulder pain." (R. 124, continued on 131).

*Summary of Evidence Before the ALJ[1]*

Plaintiff was 40 years old at the time of the decision, with a high school education, via obtaining a general equivalency diploma, and 20 years work experience as an administrative assistant to a police chief (R. 37, 119, 125, 130).

The medical evidence indicates that Plaintiff established with Fermin Ano, M.D., and sought treatment for a variety of non-severe ills, beginning in 1988 (R. 270-81). On May 8, 1999, Plaintiff was seen at Halifax Medical Center for cardiac work up due to complaints of angina (R. 142-3). He was admitted with inferior wall subendocardic myocardial infarction. Plaintiff underwent a cardiac catheterization which demonstrated three vessel coronary artery disease. He was discharged but returned shortly for coronary artery bypass grafting times three (R. 163-4; 167-9). Plaintiff was placed on Wellbutrin and nitroglycerin.

Plaintiff was seen by Dr. Ano on May 25, 1999, with complaints of feeling sore and tired after his surgery. He was to remain off work for 3 to 4 months (R. 268).

---

[1]Following the ALJ's decision, Plaintiff submitted additional evidence to the Appeals Council. When the Appeal's Council denies review notwithstanding new evidence presented to the Council, the Court looks only to the evidence actually before the ALJ in order to determine whether the ALJ's decision is supported by substantial evidence. *Falge v. Apfel,* 150 F. 3d 1320, 1323 (11th Cir. 1998). An exception exists if the claimant meets the standard for a remand under sentence six of 42 U.S.C. § 405(g). Here, Plaintiff does not contend that the evidence submitted solely to the Appeals Council was new and material, and warrants remand for further evaluation. As such, the Court limits its review to the evidence before the ALJ.

Plaintiff received follow-up care and evaluations in June and July 1999 (R. 182, 183, 208). In June, Plaintiff complained to his cardiologist that he felt fatigued and was not sleeping well (R. 208).  On June 3, 1999, his cardiologist noted that Plaintiff was two weeks out from his coronary artery bypass grafting surgery and was doing extremely well, other than having some frequency and dysuria (R. 183).  He was to continue no lifting greater than 10 pounds for the next four weeks.

Plaintiff continued to see Dr. Ano, his family physician, during this time.  Plaintiff reported to Dr. Ano on June 8 that he was feeling sore and tired all the time.  He reported having nightmares at night and that his chest was hurting.  There was no sweating or shortness of breath (R. 267).  Dr. Ano opined in a letter dated June 17, 1999, that Plaintiff's heart condition was triggered by major stress factors at work, and noted that he had been advised to "take it easy." (R. 301).

On June 21, 1999, Plaintiff returned to Dr. Ano, repeating his complaints of soreness, achiness and fatigue (R. 268).  He was advised "not to return to work until further advised, as he will need about 12 wks. post operative before he can rtn to regular work." (R. 268).  Plaintiff returned to Dr. Ano on July 1, 1999, with similar complaints.  Dr. Ano noted that he was alert, oriented and in no distress (R. 265).

 On July 29, 1999, Plaintiff reported to Dr. Ano that he was still getting tired and that his right hand would get numb and tingly (R. 264).  That same day, in a letter to Dr. Ano, cardiologist  Litke noted that Plaintiff was two months post coronary artery bypass grafting surgery and was doing extremely well other than having some numbness and tingling in his ulnar nerve distribution in the right hand and forearm, which was expected to resolve (R. 182).  Plaintiff was cleared for full activity by Dr. Litke on July 29, and discharged to Dr. Ano's care. *Id*.

Plaintiff presented to cardiologist D. Williams on August 31, 1999, for exercise on the Bruce protocol (R. 203).  The test was terminated secondary to fatigue, but Plaintiff achieved a peak heart rate of 112 and there was no evidence for ischemia at submaximal heart rate (R. 203).  An echocardiogram dated September 3, 1999,  revealed concentric left ventricular hypertrophy.  There was normal to mildly reduced systolic function. There was no evidence of valvular disease (R. 202).

On September 10, 1999, Plaintiff contacted Dr. Williams' office complaining of shortness of breath, pain in his left arm and still feeling really bad (R. 201).  Blood test, CPK and a liver function test were ordered.  On September 28, 1999, Plaintiff returned to Dr. Williams, continuing to complain of fatigue, weakness, anxiety, and just not feeling well (R. 199).  The impression was atherosclerotic heart disease, status post coronary graft surgery, hyperlipidemia and history of tobacco abuse.  It was noted that Dr. Williams did not believe that Plaintiff's symptoms were cardiac related (R. 199).

Plaintiff saw Dr. Ano twice in September 1999, with complaints of fatigue (R. 262-3).

On October 15, 1999, Plaintiff reported feeling somewhat better (R. 195).  On December 10, 1999, Plaintiff returned to his cardiologist, and reported continuing problems with fatigue and tiredness, but no chest pain or shortness of breath (R. 193).  Dr. Williams felt that Plaintiff may have been suffering from some mild postoperative depression, and Paxil, an anti-depressant, was prescribed. *Id.*

Plaintiff returned to Dr. Ano on December 14, 1999, with complaints of being tired all the time (R. 261).

Plaintiff was seen at Halifax Medical Center on January 31, 2000, with complaints of chest pain. He reported going to work and having an extremely "stressful" encounter followed shortly thereafter by significant anterior chest pain reminiscent of the discomfort he had before his bypass,

-4-

along with some discomfort in the left arm (R. 184, 189-90). An acute chest pain scan was unremarkable, and his EKG was normal (R. 192). Diagnosis was chest pain.

On April 24, 2000, Dr. Ano noted that Plaintiff had right and left leg achiness and fatigue, which was worse when sitting or standing (R. 260). Dr. Ano assessed, among other things, an adjustment reaction, and prescribed Zoloft. Plaintiff continued to complain of aches and pain in May 2000, and on return visit on July 27, 2000, Plaintiff reported having pain in both legs and wrists, numbness and tingling down both hands, fatigue and depression (R. 258, 259). He was assessed with adjustment reaction (with somatization), and prescribed antidepressants and an anti-anxiety medication. On return visit on August 15, 2000, Dr. Ano found him to be depressed and stressed (R. 257). Plaintiff was assessed with depression, and Dr. Ano referred him to a psychiatrist. *Id.*

On August 22, 2000, Dr. Williams completed a questionnaire indicating that Plaintiff did not have chest discomfort, and his ability to function was affected by his being "fatigued and tired." (R. 191).

On October 3, 2000, Plaintiff was evaluated by Hugh A. Coleman, D.O. for disability purposes (R. 215-18). His chief complaints included coronary artery disease, status post myocardial infarction, bilateral clavicular and shoulder pains, bilateral lower extremity pain and depression. Plaintiff noted that he had just begun a course of Serzone for his depression. The physical examination was largely unremarkable, and the final impression was coronary artery disease, major depression and chronic pain. (R. 215-18).

A week later, Malcolm J. Graham, Ph.D., performed a general clinical evaluation with mental status, at the request of the Social Security Administration (R. 223-225). During the evaluation, there was no problem noted in Plaintiff's attention or concentration or in his recent or remote memory. Nor

did Dr. Graham find any behavioral indications of anxiety, depression or thought disorder (R. 225).

Assessment was adjustment disorder with depressed mood by report, with a current GAF of 65-70.

A state agency non-examining physician completed a Psychiatric Review Technique form on

October 20, 2000, which indicated that Plaintiff had a non-severe adjustment disorder, with depressed

mood, resulting in mild limitations (R. 226-230).   On December 21, 2000, a state agency non-

examining psychologist completed a Psychiatric Review Technique with similar findings (R. 249-53).

Plaintiff was seen by Mary Derbenwick, M.D., on March 6, 2001 (R. 284).   Reviews of

cervical x-rays revealed hypertrophy involving the posterior cervical joints at C3-C4 with right neural

encroachment.  The lumbar spine was normal but there was a question of dilation of the aorta. *Id*.  On

follow-up visit on March 27, 2001, it was noted that Plaintiff underwent an upper extremity EMG,

which was noted to be normal (R. 284).

Ian Day, M.D., evaluated Plaintiff on April 11, 2001, for complaints of fatigue (R. 286).  It

was noted on examination that Plaintiff "look[ed] depressed." (R. 287).   Labs were ordered.

Nicholas Pastis, M.D., evaluated Plaintiff on May 15, 2001, due to complaints of  weakness,

fatigue and generalized malaise ever since the coronary bypass surgery (R.283).  There was a concern

for chronic hepatitis-B and chronic syphilis, which "certainly could explain a lot of this patient's

symptoms." *Id.*

On May 22, 2001, Dr. Ano noted: "This letter is to certify that Jack Merrill is disabled due to

myocardial infarction with CABG." (R. 254).

On January 23, 2002, Plaintiff returned to Dr. Day due to a number of complaints (R. 304).

He reported needing his nitroglycerin more frequently, although he had a stable pattern of angina or

the past two weeks. He also complained of depression, insomnia and anxiety for which he was

receiving treatment from the psychiatry team.  Assessment was skin lesions, myalgias with severe

pain, etiology unknown, and recent history of worsening angina, depression, insomnia and anxiety,

for which he was to continue his medication.  On January 24, 2002, Dr. Day noted that a referral to

a rheumatologist was being made (R. 302).

On May 24, 2002, Plaintiff was seen by Michael West, Psy.D. for evaluation (R. 308-312).

He reported having chronic pain in the legs, chest and shoulder pain, constant fatigue, angina attacks,

depression and anxiety.  Symptoms of depression include difficulty initiating and maintaining sleep,

weight gain, feeling hopeless and helpless, being irritable and moody and having frequent thoughts

of suicide.  On examination, Plaintiff was alert and oriented, judgment and insight were adequate, as

were short and long-term memory.  Overall mood was depressed, while affect was full range and

appropriate.  The Minnesota Multiphasic Personality Inventory-2 (MMPI-2) was administered and

the results suggested high levels of depression and anxiety which were related to somatic/bodily

concerns with corresponding low energy, isolation from others and high levels of anger which he

controls.  It was noted that interpersonal difficulties were likely (R. 309).

Dr. West assessed Plaintiff with mood disorder (depressed) due to general medical condition;

s/p cardiac bypass with pain, angina and fatigue remaining/ Pain disorder.  It was felt that Plaintiff

was "currently experiencing a significant affective disturbance that likely developed after the surgery

and has been made worse by his inability to recover physically from the surgery." (R. 310).  Medical

evaluation and dosage adjustment or a change to another medication was recommended to decrease

psychiatric symptoms.  Dr. West noted that Plaintiff had no limitations in the ability to understand,

remember and carry out instructions, but had moderate limitations in interacting appropriately with

supervisors and coworkers and that his pain and fatigue would make attention and concentration for sustained periods of time more difficult (R. 311-12).

K.R. Modi, M.D. a cardiologst, performed an evaluation on May 29, 2002 (R. 313-318). Plaintiff reported having pain in both legs, collarbone and sternum and reported that he would get fatigued very easily especially when trying to do things or lift small things. Dr. Modi noted that Plaintiff was "quite depressed" and that his problem may lie mainly from a psychological point of view (R. 314). Dr. Modi opined that Plaintiff had certain environmental limitations (temperature extremes, noise, dust, hazards and fumes), and could only occasionally climb, balance, kneel, crouch, crawl or stoop, but no other exertional limitations were noted (R. 315-318).

Plaintiff appeared at his hearing and testified as to his limitations (R. 35). Plaintiff testified that after his heart attack, he returned to the job where he had worked for 20 years and "I was under a lot of stress and I had a very severe angina attack and I ended up back in the hospital. I couldn't do what I used to do." (R. 38-9). Plaintiff testified that he takes care of his own personal needs (R. 40), grocery shops once in a while, and occasionally goes out with friends (R. 40-41) or sits around and watches TV (R. 44). He testified that he has been on various antidepressants (R. 41) and nitroglycerin. He stated that he has crying spells for no reason, and can not control his temper (R. 43). He seeks medical treatment for his depression, when he can afford it (R. 44-45). No vocational expert appeared.

The ALJ determined that Plaintiff has chronic pain syndrome and an affective disorder, impairments that are severe within the meaning of the Regulations, but not severe enough to meet or medically equal the impairments set forth in the Listings (R. 21). The ALJ determined that Plaintiff's testimony was not credible in that diagnostic tests and clinical findings were normal; Plaintiff was

"not on nitroglycerin," and "the record is devoid of any psychological or psychiatric treatment for his depression other than his primary care physician prescribing medical [sic] for his depression." (R. 21). The ALJ found that Plaintiff was capable of performing light work, and could tolerate unskilled, low stress jobs (R. 22). As Plaintiff's past relevant work was found to be "highly stressful" and Plaintiff had "an inability to tolerate high stress," the ALJ found that Plaintiff could not return to his past relevant work (R. 22). Finding that Plaintiff had the residual functional capacity for "the full range of light work," the ALJ applied the Medical Vocational Rule 202.21 (herein "the Grids"), and found Plaintiff to be not disabled (R. 24).

### STANDARDS OF LAW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir.

1991).  The district court must view the evidence as a whole, taking into account evidence favorable

as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d

835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of

factual findings).

### ISSUES AND ANALYSIS

Plaintiff asserts that the decision of the Commissioner was not supported by substantial

evidence in that the testimony of a vocational expert should have been elicited and the ALJ failed to

properly evaluate Plaintiff's subjective complaints.  Because we find that the ALJ's decision is

inherently ambiguous and the record does not contain sufficient findings for meaningful review, we

remand.

The ALJ must follow five steps in evaluating a claim of disability.  *See* 20 C.F.R. §§ 404.1520,

416.920.  First, if a claimant is working at a substantial gainful activity, he is not disabled.  29 C.F.R.

§ 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments

which significantly limit her physical or mental ability to do basic work activities, then he does not

have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's

impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is

disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent him from

doing past relevant work, he is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's

impairments (considering her residual functional capacity, age, education, and past work) prevent him

from doing other work that exists in the national economy, then he is disabled.  20 C.F.R. §

404.1520(f).

Here, the ALJ determined this case at step five of the process, after finding that Plaintiff could not return to his past relevant work because of "his inability to tolerate high stress."

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant court perform other work that exists in the national economy. *Foote v. Chater*, 67 F.3d 1553 (11th Cir. 1995). In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines [the "Grids"]. *Foote*, 67 F.3d at 1558. Exclusive reliance on the Grids is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." *Walter v. Bowen*, 826 F.2d 996, 1002-3 (11th Cir. 1987). In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. *Foote*, 67 F.3d at 1559. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to

preclude a wide range of employment at the given work capacity level indicated by the exertional

limitations. *Foote*, 67 F.3d at 1559.

Here, the ALJ determined that Plaintiff suffered from chronic pain syndrome and an affective

disorder, impairments which were deemed to be "severe" within the meaning of step two of the

sequence (R. 21). The ALJ then determined that the alleged mental impairments were, in fact, not

severe, and discredited Plaintiff's testimony and claim of limitations (which included an asserted

inability to mentally handle the stress of work) as unpersuasive (R. 21). Next, the ALJ determined

that Plaintiff cannot return to his past relevant work, because of his "inability to tolerate high stress."

(R. 22). Finally, the ALJ concluded that Plaintiff can perform the full range of light work and applied

the Grids, thus implicitly finding that Plaintiff had no nonexertional impairments that eroded the

occupational base or limited his ability to perform basic work skills. The inherent contradictions in

the analysis compel a remand.

We note initially that the ALJ's decision is not clear as to whether Plaintiff's impairment was,

in fact, deemed severe. On the one hand, as illustrated above, the ALJ identified the impairment,

which is nonexertional by its very nature, and deemed it severe, for the purposes of step two of the

evaluation. Further, the ALJ found that the nonexertional impairment was severe enough to prohibit

Plaintiff from returning to his past relevant work. On the other hand, the ALJ discredited Plaintiff's

testimony as to its severity and deemed Plaintiff fit to perform the full range of light work, with no

mention of the nonexertional impairment which precluded Plaintiff from returning to his past light

work job. Either the impairment is severe, or it is not. It cannot, as here, be severe enough to prohibit

return to past relevant light work, but not so severe as to have any impact on one's ability to perform

a full range of light work.  By excluding the past relevant light work, it is evident that Plaintiff did not have the ability to perform an unlimited range of light work.

In her brief, the Commissioner acknowledges the contradictory findings, but asserts that the ALJ ultimately found Plaintiff's impairment to be not severe (Doc. No. 14 at 5).  Assuming that is the ALJ's finding, it is not supported by the asserted factual basis.  Plaintiff claimed to be disabled based solely on nonexertional impairments: "excessive fatigue, depression, no stress tolerance, lack of concentration, leg pain, chest, arm and shoulder pain." (R. 124, continued on 131).  The ALJ lists three reasons for discrediting Plaintiff's claim that his pain and depression were severe: 1) diagnostic tests and clinical findings were normal; 2) Plaintiff was not on nitroglycerin; and 3) the record lacks psychological or psychiatric treatment other than a primary care physician describing medication for depression (R. 21).  These factual findings are not supported by substantial evidence.

As set forth above, while Plaintiff's cardiology condition was deemed to be stable, with normal diagnostic tests and clinical findings, Plaintiff does not base his claim for disability on a bad heart.  Rather, as quoted above, Plaintiff claims the residuals of his heart condition have left him fatigued, depressed and in pain.  As for these impairments, the diagnostic tests and clinical findings consistently showed that Plaintiff was, indeed, depressed and fatigued.  Dr. Williams, Plaintiff's cardiologist, diagnosed depression and placed Plaintiff on Paxil.  Dr. Ano repeatedly noted depression and fatigue in his clinical findings, as well as adjustment disorder, and prescribed anti-depressants and anti-anxiety medication to manage the condition.  Consulting physician Coleman diagnosed major depression.  Dr. Day's notes contain findings that Plaintiff was depressed, and was to continue his medication.  Dr. West administered the Minnesota Multiphasic Personality Inventory-2 (MMPI-2) to Plaintiff and the results suggested high levels of depression and anxiety which were related to

-13-

somatic/bodily concerns with corresponding low energy, isolation from others and high levels of anger which he controls.  Dr. Modi, a cardiologist, found Plaintiff to be "quite depressed."  There simply is no support for a finding that diagnostic tests and clinical findings were "normal" in the face of this universal recognition of the medical condition of depression.

The ALJ's second asserted finding, that Plaintiff was not on nitroglycerin, is also contradicted by the record.  Plaintiff testified, and the medical evidence shows that, in fact, Plaintiff did take nitroglycerin. *See* Dr. Day's notes at R. 304, *see also* R. 314, 332.  A finding that Plaintiff was not on nitroglycerin is not supported by substantial evidence.

The third finding, that Plaintiff's only mental health treatment was provided by his family practitioner, is true, but is insufficient as a matter of law to completely discredit the existence of a medical condition.  The Court is aware of no authority that prohibits medical doctors who are not psychiatrists from diagnosing or managing a patient's depression.  Indeed, the Court takes judicial notice that *most* cases of depression in the United States are presented to and managed by a patient's family doctor.[2]  While a specialist is no doubt the preferred choice for treatment of any serious malady, and depression is no exception, there may be numerous reasons -- financial or personal -- which make such treatment unfeasible.  While the ALJ is entitled to consider a treating physician's area of expertise in evaluating his opinions, the Court notes that here, *all* of Plaintiff's doctors, including his cardiologists, noted Plaintiff's depression and resulting symptoms.  On this record, there is simply no support for the implicit conclusion that because Plaintiff was not seeing a mental health specialist, his depression was not real or significant.

---

[2]"Studies show that 74% of people seeking help for depression will first go to their primary care physician." http://depression.about.com/cs/findadoc/a/bestdoctor.htm

As these three reasons are all that is offered for discrediting Plaintiff's allegations of limiting depression, a finding that the depression is not severe based solely on these reasons is not supported by substantial evidence.

To the extent that the ALJ found that Plaintiff's impairment was severe enough to result in some occupational limitations, a conclusion implicit from his finding that Plaintiff was precluded from high stress jobs and thus, could not return to his past light work job, the ALJ failed to analyze the impact of this nonexertional limitation, with respect to Plaintiff's ability to perform a full range of light work or perform basic work skills.  As set forth recently by the Eleventh Circuit, in a similar context:

> The ALJ also identified one specific nonexertional limitation--that Phillips was limited to "entry level work in light of her assertion that she can only handle one thing at a time to avoid stress." Given that the ALJ limited Phillips's employment at the sedentary level to jobs that do not involve multi-tasking, the ALJ must specifically determine in the first instance whether such a restriction significantly limits Phillips's basic work skills; that is, whether there are a wide range of sedentary jobs that do not require multi-tasking. *Foote,* 67 F.3d at 1559 ("The ALJ must make a specific finding as to whether the nonexertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations." (internal quotation marks and citations omitted)). The ALJ must address and resolve this issue before relying on the grids. Because the ALJ did not address this issue, we remand this case to the Commissioner so that the ALJ may consider whether Phillips's nonexertional limitations significantly limit her basic work skills at the sedentary work level.

*Phillips v. Barnhart*, 357 F.3d 1232, 1243-1244 (11th Cir. 2004).  As in *Phillips,* having accepted the asserted limitation that Plaintiff could not handle stress, the ALJ was obligated to determine whether there are a wide range of light work jobs that can be characterized as low stress.  Additional analysis, perhaps assisted by the testimony of a vocational expert, is required.

-15-

The Court does not hold that Plaintiff is, in fact, disabled, nor that the ultimate conclusion reached by the ALJ in this case will be found to be incorrect.  However, where the sole nature of the disabling impairment is nonexertional, special care must be taken to clearly set forth the existence of any such impairment, and the extent of the effects of the  impairment on a claimant's ability to perform basic work skills or work at a particular level, before an ALJ can properly rely solely on the Grids.

### CONCLUSION

The matter is **REVERSED** and **REMANDED** to the Commissioner for further clarification of the severity *vel non* of Plaintiff's impairment, and the effect of the impairment on Plaintiff's ability to perform basic work skills or perform at a given exertional level.  Vocational expert testimony should be obtained, if appropriate.  The Clerk is directed to enter judgment for Plaintiff, and to terminate all pending matters and close this case.

**DONE** and **ORDERED** in Orlando, Florida on January 9, 2006.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record

-16-